[Crim. No. 14801. Third Dist. Jan. 6, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
RAYFORD ARTHUR WHITE, Defendant and Appellant.

## Counsel

Frank O. Bell, Jr., State Public Defender, under appointment by the Court of Appeal, and Cynthia A. Thomas, Deputy State Public Defender, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Anthony L. Dicce and Maureen A. Daly, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**SPARKS, J.**—As the appropriate measure of the defendant's culpability in a brutal sexual attack, the jury found the defendant guilty of a melange of crimes and enhancements contained in 13 counts in the information, acquitting him on only 1 count of attempted sodomy.[1] Following the verdict, bifurcated allegations of prior convictions (§§ 667; 667.5, subd. (b)) and of the defendant's status as a habitual criminal who inflicts great bodily injury (§ 667.7) were tried to the court, which sustained them all.

The court selected the oral copulation in count N as the base term, finding the nature of the crime to deserve the upper term of eight years (rule 421, subd. (a)(1), Cal. Rules of Court [hereafter rules]) and adding a total of five

---

[1]The information originally charged 15 counts but 1 count was severed and later dismissed. Defendant was convicted of these 13 offenses: *Count A*: first degree burglary (Pen. Code, §§ 459/460 [subsequent undesignated section references are to the Penal Code]); *count B*: assault with force likely to produce great bodily injury while armed with a knife (§ 245, subd. (a)(1); § 12022, subd. (b)); *count C*: attempted rape while armed with a knife (§ 664/261, subd. (2); § 12022, subd. (b)); *count D*: attempted sodomy while armed with a knife (§§ 664, 286, subd. (c); § 12022, subd. (b));*count E*; anal or genital penetration with a foreign object while armed with a knife (§ 289, subd. (a); § 12022, subd. (b)); *count F*: anal or genital penetration with a foreign object while armed with a knife; *count G*: attempted sodomy while armed with a knife: *count H*: attempted rape while armed with a knife; *count I*: forcible oral copulation while armed with a knife (§ 288a, subd. (c); § 12022.3, subd. (b)); *count J*: forcible oral copulation while armed with a knife; *count K*: kidnapping while armed with a knife (§ 207; § 12022, subd. (b)); *count M*: attempted rape while armed with a knife and kidnapping for the purpose of committing rape (§§ 664/261, subd. (2); § 12022, subd. (b); § 667.8); *count N*; forcible oral copulation while armed with a knife and kidnapping for the purpose of committing forcible oral copulation (§ 288a, subd. (c); § 12022.3, subd. (b); § 667.8). Defendant was acquitted of *count L,* which charged attempted sodomy.

years for the deadly weapon and kidnapping enhancements on the count found true by the jury. The court next selected the oral copulation in count J, again choosing the upper term on the basis of the nature of the crime, choosing a consecutive sentence because it was a separate act of violence (rule 425(a)(2)), and choosing a fully consecutive sentence (§ 667.6, subd. (c)) because of the victim's vulnerability. (Rules 425(b); 421(a)(3).) The court also imposed two years for the deadly weapon enhancement found true by the jury on this count. The court added two five-year enhancements for prior serious felonies of attempted robbery (§§ 664/211) in 1966 and kidnapping for purposes of robbery (former § 209 [Stats. 1951, ch. 1749, § 1, p. 4167]) in 1972.[2] As a separate and consecutive sentence, the court imposed a life sentence in state prison with no possibility of parole before 20 years, based on the use of force likely to produce great bodily injury in Count B and the prior convictions for attempted robbery and kidnapping.[3] Finally, the court selected middle-term concurrent sentences for the remaining convictions, then stayed imposition of sentence on all those convictions and their enhancements and stayed the enhancements for the remaining priors as well. A remaining count, which had been severed before trial, was dismissed on motion of the People.

On appeal, the defendant raises several sentencing issues, requiring the preceding extensive recitation but fortuitously rendering superfluous any detailed recitation of the facts surrounding the defendant's repulsive course of conduct. We find merit in several of his contentions; in light of the painstaking care with which the trial court valiantly strove to tailor an appropriate sentence from the alternatives presented by this miasma of offenses, we shall remand for the trial court to reexercise its discretion in accordance with the views expressed in this opinion.

## FACTS

Briefly summarized, the jury based its verdicts on the events of the night of October 18, 1984. The victim, Mary V., resided in an apartment on Broadway in Sacramento. She was awakened that night by pounding on her front door. Recognizing the defendant from a prior unpleasant encounter, she immediately tried to phone the police. The defendant burst through the

---

[2]Although the abstract of judgment introduced by the People showed this was a conviction under section 209, we grant the defendant's motion to take judicial notice of the modification of that conviction on appeal to one of simple kidnapping. (§ 207.) (See *People* v. *White* (Jan. 29, 1973) 3 Crim. 6607 [unpub. opn.].) The implications of this error will be analyzed in part I, *post.*

[3]This was an inadvertent misstatement by the court during sentencing; previously, during the actual determination of the defendant's status as a habitual offender, the court found the requirements of section 667.7 satisfied by the prior kidnapping conviction and a 1979 conviction for a violation of section 245.

door, slapped the receiver out of the victim's hand with such force that the phone flew two feet up in the air and broke when it hit the floor, and wrapped his right arm around her neck. He beat her head back and forth, threatening to kill her if she did not come with him. He then dragged her by her neck outside her apartment. Warning her that he would kill her if she did not cooperate, the defendant displayed a portion of a knife in his left pocket with his free hand, then dragged her to a dark area about 50 yards behind her building where he committed a number of the sex crimes of which he was convicted. Frustrated by his inability to achieve an erection or orgasm, he pulled the victim along by her arm and threw her down in the mud in a second location in the apartment complex some 150 to 200 yards away. He threatened to kill her if he did not "come." He now committed the remainder of the sex crimes of which he was convicted. Finally, with the victim silently praying to God for the defendant to ejaculate while she was orally copulating him, the defendant at last did so.

## I

We begin with the sentencing error of greatest import for the defendant. He contends that the trial court erroneously found that he was an habitual offender under section 667.7. In relevant part, section 667.7 provides: "Any person convicted of a felony in which such person . . . personally used force which was likely to produce great bodily injury, who has served two or more prior separate prison terms as defined in Section 667.5 for the crime of . . . kidnapping for ransom, extortion, or robbery; robbery involving the use of force or a deadly weapon; . . . assault with a deadly weapon; assault with a force likely to produce great bodily injury; . . . or any felony punishable by death or life imprisonment with or without the possibility of parole is a habitual offender [and] shall be punished by imprisonment in the state prison for life and shall not be eligible for release on parole for 20 years, or the term determined by the court pursuant to Section 1170 for the underlying conviction, including any enhancement applicable under Chapter 4.5 . . . of Title 7 of Part 2, . . . whichever is greatest. . . ."

Defendant's prior convictions pled in the information and proven to the trial court were the 1966 attempted robbery conviction, the 1972 kidnapping conviction which—as noted in footnote 2, *ante*—was reduced on appeal from kidnapping for robbery to simple kidnapping, the 1979 conviction under section 245, and a 1982 conviction for receiving stolen property. (§ 496.) Only the section 245 conviction satisfies the requirements of section 667.7.

As the Attorney General graciously concedes, the modification of the kidnapping charge to one for simple kidnapping under former section 207

(see Stats. 1905, ch. 493, § 1, p. 653) eliminated the element of intending ransom, extortion, or robbery included in the enumerated felony in section 667.7. Moreover, simple kidnapping was not punishable by death or life imprisonment in 1972, which would be necessary to satisfy the residual felony clause of section 667.7. (See Stats. 1923, ch. 238, § 1, p. 486.) Thus, the 1972 conviction for kidnapping is no longer within the ambit of section 667.7. The 1982 conviction for receiving stolen property is not among the enumerated felonies, and is not punishable by life imprisonment or death. Nor will the 1966 conviction for attempted robbery satisfy the statute, for attempted robbery is not the same crime as robbery (*People v. Arguero* (1931) 113 Cal.App. 424, 426 [298 P. 520]; see *People v. Burns* (1902) 138 Cal. 159, 160 [70 P. 1087]), and the Legislature did not include attempts among the felonies in section 667.7 (as it did, for example, in § 1192.7, subd. (c)(25), or § 12022) Therefore, despite a probation report which reveals a history of violent offenses against women dating back 20 years, the defendant is not a habitual criminal within the meaning of section 667.7 and the consecutive life sentence must be stricken.[4]

## II

■ Defendant next contends that the trial court improperly sentenced him to a full consecutive term under section 667.6, subdivision (c) for the oral copulation conviction. Citing *People v. Foley* (1985) 170 Cal.App.3d 1039 [216 Cal.Rptr. 865], he argues that the jury did not make the requisite factual findings to support the consecutive sentence under that section. In *Foley* this court was confronted with a discrepancy between language in section 286, subdivision (c), which made criminal any "act of sodomy with another person . . . when the act is accomplished against the victim's will by means of force, violence, duress, menace, or *fear of immediate and unlawful bodily injury,* " and the language of the section 667.6, subdivision (c), as it then read, which permitted full consecutive sentences "for each violation of . . . committing sodomy or oral copulation in violation of Section 286 or 288a by force, violence, duress, menace or *threat of great bodily harm* whether or not the crimes were committed during a single transaction." (See Stats. 1979, ch. 944, § 10, p. 3258, italics added.) We determined that the effect of this discrepancy was to impose a requirement in any conviction for sodomy under section 286 or for oral copulation under section 288a[5] of a

---

[4]Thus we need not reach the defendant's contention the kidnapping conviction was improperly used to support both a five-year enhancement and the habitual offender punishment in violation of the holding in this court's opinion in *People v. Traina* (1985) 168 Cal.App.3d 305, 308 [214 Cal.Rptr. 213].

[5]The parallel provisions of section 288a, subdivision (c) then provided criminal liability for "[a]ny person who participates in an act of oral copulation with another person . . . when the act is accomplished against the victim's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim . . . ." (Stats. 1983, ch. 949, § 3, p. 3417.)

specific jury finding of the greater quantum of bodily harm contemplated by section 667.6, subdivision (c), before fully consecutive sentences could be imposed for the conviction. (*Foley, supra,* 170 Cal.App.3d at pp. 1050-1058.) We reached an identical conclusion in *People* v. *Riffey* (1985) 171 Cal.App.3d 419, 425 [217 Cal.Rptr. 319].

Here, in a fashion comparable to that in *Foley,* the information charged the crime in the language of the statute and not the enhancement. Thus it was alleged that the act of oral copulation was accomplished "by means of force, violence, duress, menace and by instilling fear of immediate and unlawful bodily injury" upon the victim and the jury was so instructed. But the jury was not instructed that it had to make a special finding that the oral copulation had also been committed by "threat of great bodily harm." (§ 667.6, subd. (c).) Since defendant's violation of section 288a, subdivision (c), occurred at a time when this discrepancy was still in existence, he argues it was error for the trial court to impose a fully consecutive sentence for the violation in count J because there was no specific jury finding of threat of great bodily harm. The Attorney General argues the amendment of section 667.6, subdivision (c) (as an urgency measure effective July 30, 1985 [Stats. 1985, ch. 401, § 1]), to parallel the language of sections 286 and 288a should be applied to the defendant because he was both convicted and had sentence imposed after the effective date of the amendment. However, "[t]he ex post facto clauses of the federal and state Constitutions [U.S. Const., art. I, § 10, cl. 1; Cal. Const., art. I, § 9] prohibit retrospective laws . . . increasing the punishment prescribed for a crime *at the time it was committed* . . . ." (*People* v. *Juarez* (1986) 184 Cal.App.3d 570, 575 [229 Cal.Rptr. 145], italics supplied.) At the time of the commission of the defendant's crimes, he was only subject to fully consecutive sentences when a special jury finding was made that the crime of oral copulation was committed by "threat of great bodily harm." (Former § 667.6, subd. (c)(5).) Thus, ex post facto prohibitions prevent the 1985 amendment from reaching back and making the defendant subject to such an increased sentence absent the finding.

Nevertheless, this does not necessarily mean it was reversible error to impose a fully consecutive sentence for the second oral copulation conviction. The only manner in which prejudicial error can arise from the discrepancy between the statutes is if the jury improperly relied on the threat section of the two statutes, since the statutes are otherwise congruent.[6] In the usual circumstance, it is impossible to tell from a general verdict whether or not the jury relied on this branch of the series of disjunctive sources of criminal liability under section 288a, subdivision (c). Consequently, it is necessary

---

[6]There is no significance to the difference between the use of the word "fear" in sections 286 and 288a and the use of "threat" in former section 667.6, subdivision (c). (*People* v. *Reyes,* (1984) 153 Cal.App.3d 803, 812, fn. 5 [200 Cal.Rptr. 651].)

for an appellate court to reverse fully consecutive sentences based on such convictions. (*People* v. *Riffey, supra,* 171 Cal.App.3d at p. 425; *People* v. *Reyes* (1984) 153 Cal.App.3d 803, 812-813 [200 Cal.Rptr. 651].)

But where, under the circumstances of a particular case, it is immaterial whether the jury had also been instructed that it must find any threat to be one "of great bodily harm," a needless reversal for a harmless error is not required. As we shall explain, this is such a case.

We begin our assessment of the failure to instruct on the definitional components of section 667.6 by assuming that instructional error which omits an element of enhancement raises error of federal constitutional dimension. (See *People* v. *Garcia* (1984) 36 Cal.3d 539, 550 [205 Cal.Rptr. 265, 684 P.2d 826].) As the California Supreme Court recently noted in *People* v. *Rodriguez* (1986) 42 Cal.3d 1005, 1012-1013 [232 Cal.Rptr. 132, 728 P.2d 202] "[i]n viewing the applicable harmless-error standard, the United States Supreme Court recently reiterated that in *Chapman* [v. *California* (1967) 386 U.S. 18 (17 L.Ed.2d 705, 87 S.Ct. 824, 24 A.L.R.3d 1065)], it had 'rejected the argument that errors of constitutional dimension necessarily require reversal of criminal convictions.' To that end, the court observed, ' "we have repeatedly reaffirmed the principle that an otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record. that the constitutional error was harmless beyond a reasonable doubt." *Delaware* v. *Van Arsdall,* 475 U.S. 675, 681' (*Rose* v. *Clark* (1986) 478 U.S. 570 [92 L.Ed.2d 460, 469, 106 S.Ct. 3101, 3105].) Although some errors require 'reversal without regard to the evidence in the particular case' (*id.* at p. _ [92 L.Ed.2d at p. 470, 106 S.Ct. at p. 3106] citing *Chapman, supra,* 386 U.S. at p. 23, fn. 8 [17 L.Ed.2d at p. 710]), the court observed that 'if the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any ... errors ... are subject to harmless error analysis.' (*Rose* v. *Clark, supra,* 478 U.S. at p. _ [92 L.Ed.2d at p. 471, 106 S.Ct. at pp. 3106-3107] [harmless error standard applied to instruction embodying an unconstitutional presumption] ...."

■ In any event, even if the prejudicial error per se rule applied to instructions which omitted an element of an enhancement, that rule would be subject to what has become known as the *Cantrell-Thornton* exception. That exception to the per se reversible error rule arises when "the parties recognized that [the omitted element] was in issue [and] presented all evidence at their command on that issue, and [when] the record not only establishes the necessary [element] as a matter of law but shows the contrary evidence not worthy of consideration." (*People* v. *Garcia, supra,* 36 Cal.3d at p. 556; fn. omitted.) In such a case an appellate court may hold as a matter of law that a defendant's acts constitute a violation. (See *People* v. *Thornton* (1974) 11 Cal.3d 738, 767-768 & fn. 20 [114 Cal.Rptr. 467, 523 P.2d 267] [finding

the defendant's uncontradicted asportations sufficient to constitute a violation of kidnapping statute as a matter of law]; *People v. Cantrell* (1973) 8 Cal.3d 672, 684-685 [105 Cal.Rptr. 792, 504 P.2d 1256] [no reversible error for failure to instruct on a theory of manslaughter not raised by the evidence].) ■ Therefore, if the evidence presented in the instant case would show any statements made by the defendant constituted threats of great bodily harm as a matter of law with no evidence worth any consideration to the contrary, any error in failing to request a specific finding from the jury would be harmless beyond a reasonable doubt.

As noted in our abbreviated statement of facts, the victim testified the defendant repeatedly threatened to kill her for either failure to cooperate or failure in helping him achieve sexual satisfaction. The defendant did not testify and his defense was solely that of alibi. Thus, he did not dispute the victim's version of the events (as a defense of consent or imperfect consent might), but simply put forth the position someone else was responsible (a claim the jury obviously rejected). Looking to this undisputed testimony of the statements made, we may safely state that a threat to kill someone also constitutes a "threat of great bodily harm" within the meaning of section 667.6, subdivision (c) as a matter of law. Thus, no reasonable juror—if requested to focus on the threat branch of liability for oral copulation—could have found other than the presence of a threat of great bodily harm. Thus we are able "to declare a belief that it was harmless beyond a reasonable doubt." (*Chapman, supra,* 386 U.S. at p. 24 [17 L.Ed.2d at p. 710].)[7]

### III

■ We turn next to the defendant's arguments concerning the sustained allegations attached to counts M and N of kidnapping for the purpose of committing the underlying sexual offenses. Section 667.8 provides, "Any person convicted of a felony violation of Section 261 . . . [or] 288a . . . who, for the purpose of committing that sexual offense, kidnapped the victim in violation of section 207, shall be punished by an additional term of three years."

---

[7]The tangential concern raised in the defendant's brief with the variance between the information's allegations of a violation of section 288a termed in the conjunctive ("and by instilling fear . . .") and the wording of the instruction on section 288a in the disjunctive ("or by instilling fear . . .") is of no import. It has long been the rule in this state that an information may be pled in the conjunctive even if the statute reads in the disjunctive. (*People v. Tomlinson* (1868) 35 Cal. 503, 508-509; see *Cohen v. Municipal Court* (1967) 250 Cal.App.2d 861, 871 [58 Cal.Rptr. 846] [dis. opn.].) If the defendant complains of the wording of the information, he has waived such an argument because he did not demur to the information below. (§ 1012.) If he is objecting to a variance 'twixt pleading and proof, he has failed to show he was prejudiced thereby in the preparation of his case by being misled by the information. (*People v. Powell* (1974) 40 Cal.App.3d 107, 123-124 [115 Cal.Rptr. 109].)

We first turn to an error in the stayed enhancement on count M which the Attorney General again graciously concedes. In count M, the defendant was charged with *attempted* rape. Section 667.8, unlike various other provisions in the Penal Code (but like § 667.7), does not expressly include attempted commission of its enumerated offenses within its ambit, which we must assume is an intentional choice of the Legislature. (*People* v. *Le* (1984) 154 Cal.App.3d 1, 11 [200 Cal.Rptr. 839].) And attempts, as we have noted above, are offenses distinct from the completed crime. (*Id.,* at p. 10; *Arguero, supra,* 113 Cal.App. at p. 426; *see Burns, supra,* 138 Cal. at p. 160.) Thus, on remand, the trial court must strike the kidnapping enhancement to count M.

 For the enhancement actually imposed in connection with count N, the defendant contends the jury was improperly instructed because there were no specific instructions informing the jury they must find the kidnapping in the enhancement to have been for the purpose of committing the underlying offense. The only instruction concerning kidnapping read to the jury was a modified version of CALJIC No. 9.19 (1979 rev.), which we set out in the margin.[8]

The defendant is correct in noting that the form of this instruction is defective in some respects. Although it defines simple kidnapping and notes that special allegations of kidnapping for the purpose of committing an underlying offense are attached to counts L, M, and N, it fails to instruct the jury specifically that they must *find* the defendant committed the kidnappings for the purpose of perpetrating the underlying offenses before they can sustain the allegations. However, in reviewing instructions on appeal we look to the instructions given as a whole and presume the jurors were intelligent

---

[8]The instruction given was as follows: "The defendant is charged in Count K of the Information with the commission of the crime of kidnapping, a violation of Section 207 of the Penal Code. Additionally, Counts L, M and N each include a special allegation that a kidnapping was committed for the purpose of committing the charged crimes, that is, the crimes charged in those counts.

"Every person who unlawfully and with physical force moves any person against his will and without his consent for a substantial distance, that is, a distance more than slight or trivial or who compels any other person against his will and without his consent and because of a reasonable apprehension of harm, to move for a substantial distance, that is, a distance more than slight or trivial, is guilty of the crime of kidnapping.

"In order to prove the commission of the crime of kidnapping, each of the following elements must be proved:

"1. That a person was unlawfully moved by the use of physical force, or

"2. That a person was unlawfully compelled by another person to move because of a reasonable apprehension of harm, and

"3. That the movement of such other person was against his will and without his consent, and

"4. That the movement of such other person was for a substantial distance, that is, a distance more than slight or trivial."

persons capable of correlating them. (*People* v. *Coleman* (1979) 89 Cal.App.3d 312, 319-323 [152 Cal.Rptr. 407]; *People* v. *Romo* (1975) 47 Cal.App.3d 976, 990 [121 Cal.Rptr. 684]; *People* v. *Nichols* (1967) 255 Cal.App.2d 217, 222 [62 Cal.Rptr. 854].) ▇ Thus, as in the analogous failures to instruct a jury on the need to find intent to kill (*Carlos* v. *Superior Court* (1983) 35 Cal.3d 131 [197 Cal.Rptr. 79, 672 P.2d 862]) or intent to aid and abet the commission of a crime (*People* v. *Beeman* (1984) 35 Cal.3d 547 [199 Cal.Rptr. 60, 674 P.2d 1318]), this error may be cured if the remaining instructions necessarily resolve the factual question against the defendant. (People v. Croy (1985) 41 Cal.3d 1, 13 [221 Cal.Rptr. 592, 710 P.2d 392]; *People* v. *Garcia, supra,* 36 Cal.3d at p. 555.)

In this case, the jury was of course instructed on the burden of the People to prove their case beyond a reasonable doubt and further that the count in question included "a special allegation that a kidnapping was committed for the purpose of committing the charged crimes, that is, the crimes charged in those counts." With this burden and that instruction in mind, any intelligent juror reading the guilty verdict ("We, the Jury in the above-entitled cause, find the Defendant . . . DID kidnap for the purpose of committing this sexual offense . . . .") or listening to the trial court read the alternative possible verdicts on the enhancements would find readily apparent the need to find beyond a reasonable doubt that the kidnap was for the purpose of committing the oral copulation. Thus, the form of the instructions, while perhaps maladroit on this issue, were sufficient when examined as a whole. Any error in the instruction was harmless beyond a reasonable doubt.

IV

As we noted at the outset, the trial court took great pains to insure that in sentencing the defendant it achieved a sentence neither overreachingly severe nor unreasonably light. However, in selecting only two of the offenses for which there were no double punishment difficulties under section 654 for fully consecutive treatment and leaving the others (such as the § 289 offenses or the remaining § 288a conviction) as stayed midterm concurrent sentences, the trial court was sentencing in a context where a consecutive life term was being imposed, so that any additionally fully consecutive sentence would have had the appearance of pure vindictiveness. As we have determined the life sentence cannot be imposed, the change of context may well induce the trial court to structure the sentences differently, for which reason we will remand for resentencing. As a result, the defendant's remaining contention attacking the upper term imposed for count N as an abuse of discretion—while thoroughly specious even on the limited number of facts surrounding the offense which we have recounted—is mooted: the trial court, in resentencing, can formally state for the record why it believed

the crime displayed particular cruelty. viciousness, callousness, or threat of great bodily harm (a pedantic exercise we would not impose on the trial court had it occurred in absence of other error (*People* v. *Smith* (1984) 155 Cal.App.3d 539, 546 [202 Cal.Rptr. 259]).

The sentence imposed is vacated and the matter remanded to the trial court for resentencing in accordance with the views expressed in this opinion. In all other respects, the judgment is affirmed.

Carr, Acting P. J., and Sims, J., concurred.